UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                   Case No. 17-81548-WRS
                                                        Chapter 13
ANDREW M. COLLUM,

    Debtor.
_____

ANDREW M. COLLUM,

    Plaintiff,

v.                                                      Adv. Proc. 18-08011

EAST ALABAMA MEDICAL CENTER AND
THE EAST ALABAMA HEALTH CARE
AUTHORITY D/B/A EAST ALABAMA
MEDICAL CENTER,

    Defendants.

**MEMORANDUM DECISION**

This matter came before the Court for telephonic hearing on June 12, 2019, on East Alabama Medical Center's (EAMC) Motion for Summary Judgment (Doc. 12). EAMC was present by counsel Derek F. Meek, and Debtor was present by counsel Anthony B. Bush. The Court has considered the motions filed by both parties (Docs. 12 & 15). For the following reasons, the Court **DENIES** EAMC's motion, **GRANTS** summary judgment in favor of Debtor, and awards Debtor's attorney's fees in the amount of $150.00.

**I. Facts**

Debtor sought medical treatment from EAMC on November 20, 2015 and February 16, 2016. (Doc. 12). After receiving treatment, Debtor failed to pay EAMC for their services. *Id.* On August 1, 2017, EAMC obtained a judgment against Debtor in the Small Claims Division of the District Court of Lee County, Alabama based on Debtor's failure to pay. *Id.* To collect its debt,

EAMC chose to participate in a Debt Setoff Program through the Association of County Commissions of Alabama (ACCA). *Id.* Alabama Code Section 40-18-100 *et seq.* authorizes and governs the operation of the setoff program. Through the setoff program, a county or instrumentality of a county may appoint the ACCA to submit certain delinquent debts to the Alabama Department of Revenue (ADOR). *Id.* Prior to the petition date, EAMC applied to have a portion of Debtor's 2017 Alabama Income Tax offset to pay part of the judgment. (Docs. 12 & 15).[1]

On November 6, 2017, Debtor filed a voluntary petition for Chapter 13 bankruptcy relief. *Id.* Debtor's counsel presented substantial evidence showing that EAMC received notice of Debtor's bankruptcy (Doc. 15). After receiving notice of the bankruptcy, EAMC took no steps to undo the setoff. Further, it filed a proof of claim for the amount Debtor owed. *Id.* In April of 2018, the ADOR automatically offset $328.00 from Debtor's income tax refund and distributed the funds to the ACCA. (Docs. 12 & 15). Without sending a demand letter or attempting to resolve the matter, Debtor's counsel filed this complaint on May 18, 2018. (Doc. 12). EAMC returned the full amount of the offset to Debtor, with interest, on December 20, 2018. (Docs. 12 & 15). On March 11, 2019, EAMC filed the underlying Motion for Summary Judgment (Doc. 12), and Debtor responded opposing summary judgment (Doc. 15) on April 29, 2019.[2] This Court heard oral arguments on June 11, 2019 and took the matter under advisement.

---

[1] Debtor's counsel took great care to note EAMC did not provide an affidavit with a specific date for the commencement of the setoff program (Doc. 12). However, Debtor's counsel prosecuted the case, in both his filings (Doc. 12) and the telephonic hearing, as if EAMC engaged in the setoff program pre-petition. As Debtor is entitled to Summary Judgment whether the setoff occurred post or pre-petition, this Court does not view that as a material fact in dispute.

[2] Three days after the reply deadline.

2

## II. Law

### A. Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A).

### B. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c) and Bankruptcy Rule 7056, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A court must make all inferences in favor of the party opposing summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The moving party bears the burden of showing there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That burden is met by showing the non-moving party will be unable to establish the existence of an element that essential to its case, "and on which that party will bear the burden of proof at trial." *Id.* When the moving party meets its burden, the burden shifts to the nonmoving part to show there is a genuine issue of material fact. *Id.* at 324. "If the evidence of the nonmoving party is merely colorable or not significantly probative, summary judgment may be granted." *In re Narcisi*, 691 F. App'x 606, 611 (11th Cir. 2017).

A court may grant summary judgment on grounds other than those raised on the motions before it where the facts are fully developed and show the non-moving party is entitled to judgment as a matter of law. *Wilder v. Prokop*, 846 F.2d 613, 626 (10th Cir. 1988); *Velasquez v. Salsas & Beer Rest., Inc.*, 735 F. App'x 807, 810 (4th Cir. 2018); *Portsmouth Square Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 869 (9th Cir. 1985); *In re Moore*, 121 B.R. 126, 127 (Bankr. N.D. Ga. 1990); *see also Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614,

3

620 (10th Cir. 1992) (holding courts may grant summary judgment "on a ground not formally raised in a summary judgment motion"). Rule 56 does not limit a court's consideration of summary judgment strictly to the content of the party's pleadings. *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 921 (7th Cir. 1996). Instead, Rule 56(c) allows a court to examine "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Further, a court may grant summary judgment, without notice, on a purely legal issue where both parties fully develop the issue and the evidentiary record is complete. *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003); *see also Velasquez*, 735 F. App'x at 810 (upholding the district court's grant of summary judgment *sua sponte* against the party moving for summary judgment); *Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 223-24 (3d Cir. 2004) (noting some courts consider a party on notice where targeted party reasonably could believe the court might reach the issue on summary judgment and "received a fair opportunity to put its best foot forward") (quoting *Leyva v. On the Beach, Inc.*, 171 F.3d 717, 720 (1st Cir. 1999)).

### C. Automatic Stay Violations

The automatic stay provision of § 362(a) is a fundamental protection afforded to debtors by the Bankruptcy Code. *Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503, 106 S. Ct. 755, 760, 88 L. Ed. 2d 859 (1986). Accordingly, the scope of the stay is intentionally broad. *In re Rush-Hampton Indus., Inc.*, 98 F.3d 614, 616 (11th Cir. 1996) (citing *United States v. Norton*, 717 F.2d 767, 770–71 (3d Cir.1983)). The stay is intended to prevent creditor harassment and coercion of the debtor. *In re Smith*, 185 B.R. 871, 873 (Bankr. M.D. Fla.

4

1994). Without the stay, debtors would not have the necessary breathing space to reorganize their affairs. *In re Briskey*, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001).

It is well established that a creditor has a duty to take affirmative steps to stop its garnishment action after a debtor files a bankruptcy petition. *See Briskey*, 258 B.R. at 477; *In re Johnson*, 479 B.R. 159, 170 (Bankr. N.D. Ga. 2012). In fact, Debtor's attorney cited to a series of cases supporting this proposition. (Doc. 15). However, this is not a garnishment action. Ordinarily, a creditor will use a writ of garnishment to collect its judgment by withholding certain amounts of a debtor's wages until repayment of the debt is completed. The debtor's employer will then withhold the wages from the debtor's check and remit them to a creditor on a check-by-check basis until the judgment is satisfied. *See e.g., In re Williams*, 460 B.R. 915, 916 (providing a clear example of how a normal garnishment action would proceed). Instead, EAMC is engaged in a setoff program. Unfortunately for Debtor, many of the cases he cites to in his response opposing summary judgment are not directly applicable to this matter. Instead, those cases focus on more traditional collection or garnishment actions. *See e.g.*, *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1216 (9th Cir. 2002) (holding a post-petition collection action violated the automatic stay); *In re Roche*, 361 B.R. 615 (Bankr.N.D.Ga.2005) (traditional garnishment action); In re Briskey, 258 B.R. 473, 477 (Bankr. M.D. Ala. 2001) (garnishment action); *In re Preston*, 395 B.R. 658, 660 (Bankr. W.D. Mo. 2008) (addressing sequestration of a debtor's post-petition wages); *Spagner v. Latham, Stall, Wagner, Steel & Lehman, P.C.*, No. CIV-04-508-L, 2005 WL 1950364, at *1 (W.D. Okla. Aug. 15, 2005) (traditional wage garnishment).

5

### 1. Post-Petition Setoff and the Automatic Stay

As noted above, EAMC was engaged in a setoff program. Though the mechanics of a setoff action are not entirely the same as those of a wage garnishment, it is still subject to the prohibitions of the automatic stay. The right of setoff allows entities that owe each other money to apply both debts against the other to avoid "the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L. Ed. 2d 258 (1995). That right is specifically preserved by the Bankruptcy Code. 11 U.S.C. § 553; *In re Patterson*, 967 F.2d 505, 509 (11th Cir. 1992).

Section 362(a)(7) provides that a debtor's petition in bankruptcy operates as a stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." A creditor violates the automatic stay when it is aware of the debtor's bankruptcy case and nevertheless exercises its right of setoff. *In re GeneSys, Inc.*, 273 B.R. 290, 294 (Bankr. D.D.C. 2001); *see also In re LeGrand*, No. ADV. 98-80166-W, 1999 WL 33486087, at *3 (Bankr. D.S.C. Mar. 8, 1999) (holding the government's setoff of the debtor's tax refund post-petition was a willful violation of the automatic stay). To exercise a valid right of setoff, creditors are required to move courts for relief from the automatic stay. *Patterson*, 967 F.2d at 509; *In re Okwukwu*, 210 B.R. 194, 196 (Bankr. N.D. Ala. 1997). Accordingly, a creditor who engaged in a pre-petition setoff program may still be found in contempt for exercising the right of setoff against the debtor post-petition. *See In re Parker*, 519 B.R. 884, 890 (Bankr. D.D.C. 2014).

## 2. Willful Violation Standard

A debtor bears the burden of establishing a violation of the automatic stay occurred and that the violation was willful. *Fleet Mortg. Grp., Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999); *In re Lord*, 270 B.R. 787, 794 (Bankr. M.D. Ga. 1998). Violations of the automatic stay are "willful" if the violator (1) knew of the stay and (2) intentionally committed the act that lead to the violation of the stay, "regardless of whether the violator specifically intended to violate the stay." *Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1555 (11th Cir. 1996); *In re Spinner*, 398 B.R. 84, 94 (Bankr. N.D. Ga. 2008). If a stay violation is inadvertent, contempt is not an appropriate remedy. But, the failure to undo a "technical" violation may make the violation willful. *In re Harrison*, 599 B.R. 173, 183 (Bankr. N.D. Fla. 2019). Further, parties who fail to take affirmative action to undo actions will be subject to § 362(k)[3] sanctions. *Id.; see also Roche*, 361 B.R. at 621 (noting creditors may not sit idly on their hands and permit violations of the stay to occur); *In re Caffey*, 384 B.R. 297, 307 (Bankr. S.D. Ala.2008) (holding "[t]he creditor should not be allowed to then sit back and 'choose to do nothing and pass the buck to the debtor' to stop the process.") (citations omitted); *In re Parker*, No. 12-11502-WRS, 2014 WL 2800754, at *2 (Bankr. M.D. Ala. Feb. 11, 2014), *aff'd in part, vacated in part sub nom. Parker v. Credit Cent. S., Inc.*, No. 1:14-CV-311-WKW, 2015 WL 1042793 (M.D. Ala. Mar. 10, 2015), *aff'd sub nom. In re Parker*, 634 F. App'x 770 (11th Cir. 2015) (holding creditors have an affirmative duty to undo pre-petition actions that would violate the automatic stay).

Based on the undisputed facts before the Court, EAMC committed a willful violation of the automatic stay. EAMC exercised the setoff post-petition to recover a pre-petition debt.

---

[3] Formerly §362(h) governed the award of attorney's fees and sanctions. Section 362(k) now governs those awards. Congress adopted this change in 2010. Accordingly, opinions published before this date will refer to §362(h) rather than the more current § 362(k).

Debtor provided EAMC with ample evidence that he was in bankruptcy (Doc. 15). Accordingly, EAMC was aware or should have been aware of Debtor's bankruptcy and failed to take the appropriate steps to avoid the violation. However, the manner in which Debtor's counsel went about commencing this action, without first attempting to resolve the matter with EAMC's counsel, goes against the spirit of the automatic stay's protections and should not be rewarded.

### III. Attorney Conduct and Fee Allocation

**A. Cooperation Among Attorneys and the Danger of Unnecessary § 362 Litigation**

While the protections offered by the automatic stay are fundamental and essential to the functioning of the bankruptcy system, it is important to not lose sight of both the purpose of the law and the equally important need to encourage efficiency in the bankruptcy system. This Court's decision in *Briskey*, sought to highlight the importance of striking a balance between the protection of debtors and effective use of the bankruptcy court's time and resources. In *Briskey*, the debtor filed a "Motion for Release of Garnishment" without first making any attempt to resolve the matter with the creditor's counsel. *Briskey*, 258 B.R. at 477. While the Court found that creditors with a traditional wage garnishment are required to take steps to release the garnishment after the debtor files for bankruptcy, the Court took issue with the debtor's counsel for failing to make an attempt to resolve the matter without court intervention. *Id.* at 477-78.

The Court's opinion, then and now, is that "all involved parties should take necessary action without first seeking the intervention of the bankruptcy court." *Id.; see also GeneSys, Inc.*, 273 B.R. at 294 (noting that a reasonable debtor would minimalize attorney's fees by having counsel request a reversal of a setoff and wait a reasonable period of time for the money to return to the debtor). Underlying this rationale is the continued need for efficiency in the bankruptcy

8

Case 18-08011    Doc 25    Filed 07/18/19    Entered 07/18/19 15:50:25    Desc Main
Document      Page 8 of 15

system. When *Briskey* was decided, over 7,000 cases were filed in the Middle District the prior year. *Id.* That number has only grown. Last year, over 8,000 cases were filed in the Middle District alone. If attorneys are unwilling or unable to make a good faith attempt at working some matters out beforehand, the efficiency of the bankruptcy system will suffer. *See also In re Price*, 179 B.R. 70, 72 (Bankr. S.D. Ohio 1995) (noting that if attorneys did not make some attempts to resolve nominal matters and every stay violation was litigated, bankruptcy courts "would do little else other than manage such litigation"). This Court is concerned that routine matters, that could easily be handled without direct court supervision, are being filed by attorneys in a knee-jerk fashion.

Failure to make any effort resolve a minor and routine stay violation before including the bankruptcy court may also suggest evidence of bad behavior on the part of a debtor's attorney. *See In re Parker*, 515 B.R. 337, 348-49 (Bankr. M.D. Ala. 2014). In *Parker*, after awarding attorney's fees in a stay violation case, this Court took the opportunity to expand on its prior holding in *Briskey* and warn against potentially abusive bankruptcy practices. *Id.* The Court noted its deep concern that "overly aggressive debtor's lawyers will litigate insubstantial stay violation cases to generate attorney's fees." *Id.* at 348-49. To deter the onset of such abusive practices, the Court reiterated its firm belief that debtors and their attorneys should make reasonable efforts to remedy stay violations before seeking court involvement. *Id.* at 348. If debtors' attorneys feel emboldened to forego working with creditors' attorneys and bring adversary proceedings for even the smallest incidental violations that walk through their door, a whole cottage industry based on these ticky-tacky filings might develop nationwide. *In re Hedetneimi*, 297 B.R. 837, 843 (Bankr. M.D. Fla. 2003); *See also In re Seaton*, 462 B.R. 582, 605 (Bankr. E.D. Va. 2011) (noting the court's concern that excessive fees for routine stay

violations might foster a "cottage industry built around satellite fee litigation") (internal quotations omitted); *In re Putnam*, 167 B.R. 737, 741 (Bankr. D.N.H. 1994) (observing that granting lavish fees for routine stay violations "will only encourage a cottage industry of precipitous § 362[(k)] litigation") (citing *In re McLaughlin*, 96 B.R. 554, 560 (Bankr. E.D. Pa. 1989)). Here, Debtor's counsel did not reach out to EAMC before filing the underlying adversary proceeding. He did not send a demand letter or attempt to contact EAMC or its attorneys. Instead, Debtor's counsel filed this adversary proceeding barely over a month after the funds were taken from his client's account. The weeks between the deduction and the lawsuit would have provided ample time to attempt to work this issue out before involving the bankruptcy court. This is the exact type of knee-jerk filing that the *Briskey* decision sought to deter.

In the Court's hearing on EAMC's Motion for Summary Judgment, Debtor's counsel claimed, without providing any evidence, that Debtor reached out to EAMC several times to ask for the return of the offset taken from his tax refund. Debtor's counsel claimed that he engaged in a "literal" interpretation of *Briskey* and assumed Debtor's alleged calls absolved him of any duty to attempt to resolve the matter without court intervention. There is no reasonable reading of *Briskey* that would entitle an attorney to that opinion. *Briskey* specifically states that when a proceeding that would violate the automatic stay is pending at the time the Debtor files bankruptcy, "all involved parties should take the necessary action without first seeking the intervention of the bankruptcy court." *Briskey*, 258 B.R. at 478. Moreover, that decision went on to note that it is "advisable that the debtor's counsel make direct contact [with creditor's counsel] on his own." *Id.*

This Court is not alone in suggesting that attorneys should make some good faith efforts at resolving a routine stay violation before involving the bankruptcy courts. *See Price*, 179 B.R.

at 73 (noting debtor's counsel should, at a minimum, reach out to creditor's counsel before filing suit in a stay violation); *In re Newell*, 117 B.R. 323, 325-26 (Bankr. S.D. Ohio 1990) (stating debtors' attorneys should contact creditors before bringing the matter to the bankruptcy court); *In re Houchens*, 85 B.R. 152, 154 (Bankr. N.D. Fla. 1988) (affirming that "prior to initiation of any contempt proceedings, it is incumbent upon an attorney representing a debtor to first make some effort to resolve the problem presented by the creditor"); *In re Hill*, 222 B.R. 119, 124 (Bankr. N.D. Ohio 1998) (noting minor stay violations "will inevitably occur and should, ideally, be resolved without litigation"); *In re Clayton*, 235 B.R. 801, 812 (Bankr. M.D.N.C. 1998) (encouraging debtors' attorneys to cooperate with creditors to "promptly mitigate damages caused by a stay violation"); *McLaughlin*, 95 B.R. at 560 (stating debtors should "encourage the offending creditor to either desist or, if the creditor refuses without resort to a higher authority, encourage the debtor to file a declaratory action" before escalating a routine stay violation); *In re Craine*, 206 B.R. 594, 598 (Bankr. M.D. Fla. 1997) (chastising debtor's attorney for not making an attempt to resolve the matter and "obviate the need for court intervention"); *Shadduck v. Rodolakis*, 221 B.R. 573, 585 (D. Mass. 1998) (noting that some courts have disallowed debtors' attorneys' fees in stay violation cases for failing to attempt a resolution with creditor before filing a motion for contempt and sanctions); *In re Locklin*, No. BAP CC-15-1008-KUFKI, 2015 WL 8157185, at *6 (B.A.P. 9th Cir. Dec. 7, 2015) (affirming lower court's finding that "[debtor's] counsel should have attempted to rectify the stay violations by contacting [creditor's counsel]").

It should be noted that neither this decision nor *Briskey* is a sweeping mandate. In instances where efforts to reach out to creditors would be futile, debtors' attorneys may have no choice but to go directly to the court. For example, where the bad actions of a contumacious

creditor make extrajudicial resolution unlikely, debtors should not fear reproach for seeking bankruptcy court intervention. However, when the matter is routine and likely easily settled, debtor's counsel should make some effort to resolve the issue with the creditor or creditor's counsel.

### B. Attorney's Fees and Damages

Individuals injured by willful violations of the automatic stay are entitled to compensatory damages. 11. U.S.C. § 362(k)(1); *GeneSys, Inc.*, 273 B.R. at 295. Additionally, under § 362(k), a debtor's attorney is entitled to attorney's fees for successfully prosecuting a stay violation. *See In re* Smith, 296 B.R. 46, 602 (Bankr. M.D. Ala. 2002). However, courts have broad discretion to determine the appropriate amount of those fees. *Id.; see also King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1063 (2d Cir. 1995) (observing that the court was within its discretion to review and modify an attorney's fees); *In re Esposito*, 154 B.R. 1011, 1016 (Bankr. N.D. Ga. 1993) (noting bankruptcy courts may cut excessive or unreasonable attorney's fees); *Rosengren v. GMAC Mortg. Corp.*, No. CIV. 00-971(DSD/JMM), 2001 WL 1149478, at *5 (D. Minn. Aug. 7, 2001) (cutting attorney's fees in stay violation litigation where the damage was de minimus and litigation should not have been necessary). Section 362(k) only requires courts to award reasonable fees; thus, a court may use its discretion to eliminate unnecessary or excessive fees. *In re Schwartz-Tallard*, 803 F.3d 1095, 1101 (9th Cir. 2015); *In re Mosher*, 432 B.R. 472, 477 (Bankr. D.N.H. 2010); *see* also *In re Miller*, 447 B.R. 425, 434-35 (Bankr. E.D. Pa. 2011) (eliminating debtor's attorney's fees where stay violation was minimal and litigation costs were unnecessary); *In re Prusan*, 495 B.R. 203, 208 (Bankr. E.D.N.Y. 2010) (same). When determining the reasonableness of attorney's fees, the court will look to time spent on services,

12

rates charged, the importance and nature of the issue, and whether the services were necessary. *Smith*, 296 B.R. at 62.

Where the damages to the client are minimal, a court is well within its discretion to limit the award of fees. *In re Robinson*, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998); *Putnam*, 167 B.R. at 741; *Hill*, 222 B.R. at 124; *see also Seaton*, 462 B.R. at 606 (cutting debtor's attorney's fees from $10,000 to $249.00 as they were unreasonable for the minimal work required to prosecute a routine stay violation). The failure of debtor's counsel to attempt non-litigious resolution of a routine stay violation may further justify the reduction of attorney's fees. *Price*, 179 B.R. at 73.

In this matter, EAMC offset $328.00 from Debtor's state tax return. Rather than reaching out to EAMC or its counsel, Debtor's attorney instantly filed this action for contempt. This matter did not involve a series of continued setoffs or garnishments; it was a one-time withholding. It is not beyond the realm of reason to assume that a simple phone call, email, or general correspondence may have easily resolved the violation. Instead, Debtor's counsel immediately escalated the matter and made a proverbial mountain out of a molehill. While § 362(k) mandates the award of attorney's fees, this Court will exercise its right to limit and modify such fees based on their reasonableness and necessity. As a result of Debtor's counsel's failure to attempt to resolve a minor and routine violation, a large portion of the attorney's fees from prosecuting this case are unnecessary and therefore unreasonable. Accordingly, this Court will limit those fees to $150.00. As EAMC has returned the funds set off against Debtor's tax refund, with interest, there are no additional damages for the Court to address. *See In re Palumbo Family Ltd. P'ship*, 182 B.R. 447, 471 (Bankr. E.D. Va. 1995) (denying request for damages where defendant returned funds it had taken in violation of the automatic stay to debtor with interest).

This opinion is not aimed at discouraging future stay violation litigation. The automatic stay is a fundamental protection afforded to debtors. Violations of the automatic stay are often not trivial matters and require diligence, persistence, and industriousness from debtor's counsel. Instead, this opinion merely seeks to discourage precipitous litigation aimed at generating attorney's fees while also encouraging judicial efficiency in the bankruptcy court system. Further, this opinion does not set the market rate for all future stay violation cases as Debtor's counsel fears. (Doc. 15). The limitation of attorney's fees is specific to this case and will not be applied uniformly to all stay violations.

### IV. Conclusion

There are no genuine issues of material fact in dispute. Both Debtor's and EAMC's counsel agree that EAMC engaged in the setoff program for unpaid fees before Debtor filed for bankruptcy. EAMC was aware of the bankruptcy. The setoff program took money from Debtor's tax refund post-petition, and Debtor's counsel filed this underlying adversary proceeding roughly a month after the setoff. EAMC was aware of Debtor's bankruptcy and failed to stop the action that lead to the violation of the automatic stay. Therefore, EAMC committed a "willful" violation of the automatic stay. In moving for summary judgment and during its arguments at the June 11 hearing, EAMC certainly had every opportunity to "put its best foot forward." Accordingly, EAMC suffers no prejudice from this Court's entry of summary judgment in favor of Debtor.

While the Court has no authority under § 362(k) to avoid attorney's fees for willful violations, it may reduce or limit those fees based on their reasonableness. As Debtor's counsel did not attempt even the remotest effort at resolution before filing this adversary proceeding, this Court is within its power to limit his fees. Therefore, on grounds other than those presented by Debtor, this Court **GRANTS** summary judgment in favor of the Debtor and awards Debtor's

counsel fees in the amount of $150.00. This Court will enter an order by way of a separate document.

Done this 18th day of July, 2019.

/s/ William R. Sawyer

William R. Sawyer
United States Bankruptcy Judge

c: Debtor/Plaintiff
    Anthony B. Bush, Attorney for Plaintiff
    Marsha C. Mason, Attorney for Debtor
    Regan Loper, Attorney for Defendants
    Derek F. Meek, Attorney for Defendants
    Sabrina L. McKinney, Trustee
    Bankruptcy Administrator